## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PHILLIP HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          **CIVIL ACTION** |
| | )          **No. 08-2548-KHV** |
| RICOH AMERICAS CORPORATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Phillip Hill filed suit against his former employer, Ricoh Americas Corporation, alleging retaliatory discharge in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A et seq., and Kansas common law. This matter comes before the Court on Defendant's Motion To Stay Proceedings And To Compel Arbitration (Doc. #14) ("Defendant's Motion") filed April 3, 2009. For reasons set forth below, the Court overrules defendant's motion.

### Factual Background

Plaintiff's complaint and the record evidence which the parties have submitted on the motion to compel arbitration are summarized in pertinent part as follows:

On September 18, 2000, plaintiff entered an employment agreement with Lanier Worldwide, Inc. See Employment Agreement, attached as Ex. 1 to Defendant's Motion (Doc. #14). The Employment Agreement contained an arbitration clause, which provided in part as follows:

> If a legally cognizable dispute arises out of or relates to this Agreement
> or the breach, termination, or validity hereof, or the compensation,
> promotion, demotion, discipline, discharge or terms and conditions of

employment of the Employee, and if said dispute cannot be resolved through direct discussions, the parties voluntarily agree to settle the dispute by binding arbitration before the American Arbitration Association ("AAA"), Center for Public Resources ("CPR"), Judicial Arbitration and Mediation Services ("JAMS"), or the President of the State Bar Association of the State (or the President's designee) where the arbitration shall be held. . . . Disputes subject to binding arbitration pursuant to this section include all tort and contract claims as well as claims brought under all applicable federal, state or local statutes, laws, regulations or ordinances, including but not limited to, Title VII of the Civil Rights Act of 1964, as amended; the Family and Medical Leave Act; the Americans with Disabilities Act; the Rehabilitation Act of 1973, as amended; the Fair Labor Standards Act of 1938, as amended; the Age Discrimination in Employment Act, as amended; the Equal Pay Act; the Civil Rights [Act] of 1866, as amended; and the Employee Retirement Income Security Act of 1974.  Disputes subject to binding arbitration pursuant to this section also include claims against the Company's parent and subsidiaries, and affiliated and successor companies. . . . Each party shall pay for his/her/its own fees and expenses of arbitration except that the cost of the arbitrator and any filing fee exceeding the applicable filing fee in federal court shall be paid by the Company; provided, however, that all reasonable costs and fees necessarily incurred by any party are subject to reimbursement from the other party at the discretion of the arbitrator.  This arbitration provision shall not apply to any claim arising in a state that bars or prohibits the arbitration of such claims.

See id. ¶ 9.  Plaintiff initialed the arbitration provision in the employment agreement.  The employment agreement was assignable to "any successor company, without any further consideration therefor, at the sole discretion of the Company."  See id. ¶ 12.

On April 1, 2007, Ricoh acquired Lanier.  On March 20, 2007 – just before the  acquisition – plaintiff signed a retention bonus agreement which provided in part as follows:

In view of the pending consolidation of Ricoh Corporation and Lanier Worldwide, Inc., and any successor in interest to any of them (collectively, the "Company"), restructurings will occur which may trigger your right to leave your employment and be eligible for severance under existing Ricoh policy.  Although it is unclear at the present time whether your position will be materially affected, the Company would like to make every effort to retain your services at least through a transition period . . . concluding on September 30, 2007.

> During this transition, we wish to offer you a special Retention Bonus. . . .
>
> 3.     Retention Bonus. If you accept this offer and remain employed through the Transition Period, you will be eligible to receive, in addition to your regular pay and benefits, . . . $20,000. . . . If after the expiration of the Transition Period, your employment with the Company continues, this Agreement shall expire and be of no force and effect.
>
> 4.     Disqualifying Events.  You will not be eligible for any portion of the Retention Bonus if you resign or retire . . . [or] if the Company terminates your employment "For Cause." . . .
>
> 7.     Employment Relationship.  Nothing in this Retention Bonus Agreement is intended to modify the at-will employment relationship between the Company and you.  Either the Company or you may terminate the employment relationship at anytime, with or without cause.

See Retention Bonus Agreement, attached as Ex. B to Affidavit Of Phillip Hill, attached as Ex. 1 to Plaintiff Phillip Hill's Response To Defendant Ricoh Americas Corporation's Motion To Stay Proceedings (Doc. #17) ("Plaintiff's Response") filed April 16, 2009.  As part of the acquisition, Lanier assigned all of its assets and rights to Ricoh.  See Agreement And Plan Of Merger, attached as Exhibit 2 to Defendant's Motion (Doc. #14).

At an unspecified time after March 20, 2007, Ricoh presented Hill a proposed employment agreement.  See Ricoh Americas Corporation Employment Agreement, attached as Ex. C to Affidavit of Phillip Hill, attached as Ex. 1 to Plaintiff's Response (Doc. #17).  The proposed employment agreement included substantially the same arbitration clause as the employment agreement which plaintiff signed in 2000, but added to the non-exclusive list of arbitrable claims "the Sarbanes-Oxley Act of 2002 [and] any state or federal whistle blowing" claims.  See id. at ¶ 9.  Plaintiff did not sign the proposed employment agreement, and returned it to Ricoh.

On October 16, 2007, Ricoh terminated plaintiff's employment.  On December 31, 2007,

plaintiff filed an administrative complaint with the Occupational, Safety and Health Administration ("OSHA") concerning his termination.[1]   Defendant did not demand arbitration during the administrative process.   On May 22, 2008, OSHA found that plaintiff had engaged in protected activities under the Sarbanes-Oxley Act, that defendant knew of his protected activities and that he experienced an unfavorable personnel action.   OSHA found that plaintiff's activities were not a contributing factor, however, in the decision to terminate his employment.

On November 3, 2008, plaintiff filed this suit alleging that Ricoh terminated his employment in retaliation for engaging in conduct protected by the Sarbanes-Oxley Act, 18 U.S.C. § 1514A et seq., and Kansas common law.  See Complaint (Doc. #1).

## Analysis

Ricoh urges the Court to compel arbitration of plaintiff's claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  Plaintiff opposes defendant's motion, asserting that (1) the retention bonus agreement superceded the employment agreement, including the arbitration clause; (2) Kansas law prohibits arbitration of employment contracts (3) plaintiff constructively revoked any agreement to arbitrate when he filed suit; and (4) defendant has waived its right to arbitrate.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.  Federal policy favors arbitration agreements and requires that the Court rigorously enforce them.  Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  The FAA generally

---

[1]      Plaintiff alleged that Ricoh fired him in part because he had provided information concerning activities which he reasonably believed violated 18 U.S.C. §§ 1341, 1343 and/or 1348.

applies to employment contracts.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 122-23

(2001) (arbitration agreements in employment contracts generally enforceable).  Normally, on a motion

to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration.

ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal

policy in favor of arbitration); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

24-25 (1983) (court should resolve any doubts concerning scope of arbitrable issues in favor of

arbitration).  Where the parties dispute whether a valid and enforceable arbitration agreement exists,

however, this presumption of arbitrability disappears.  Riley Mfg. Co. v. Anchor Glass Container

Corp., 157 F.3d 775, 779 (10th Cir. 1998).

> FAA Section 3 states:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any
> issue referable to arbitration under an agreement in writing for such arbitration, the
> court in which such suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such agreement, shall on application
> of one of the parties stay the trial of the action until such arbitration has been had in
> accordance with the terms of the agreement, providing the applicant for the stay is not
> in default in proceeding with such arbitration.

9 U.S.C. § 3.  In seeking to compel arbitration, defendant bears the initial burden to present evidence

sufficient to demonstrate an enforceable agreement to arbitrate.  SmartText Corp. v. Interland, Inc., 296

F. Supp.2d 1257, 1263 (D. Kan. 2003).  Once defendant meets this burden, plaintiff must show a

genuine issue of material fact as to the making of the agreement.  Id.  Essentially, this creates a

summary-judgment-like standard which the Court applies in deciding whether to compel arbitration.

See Clutts v. Dillard's, Inc., 484 F. Supp.2d 1222, 1223-24 (D. Kan. 2007) (Courts of Appeals have

uniformly applied summary-judgment-like standard to motions to compel arbitration under FAA).

The question of arbitrability – whether the parties agreed to arbitrate a particular dispute – is

-5-

an issue for judicial determination.  AT&T Techs., Inc. v. Comm'n Workers Of Am., 475 U.S. 643,
649 (1986).  Before granting a stay or dismissing a case pending arbitration, the Court must determine
that the parties have a written agreement to arbitrate.  See 9 U.S.C. §§ 3 and 4; Avedon Eng'r, Inc. v.
Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997).  The existence of an arbitration agreement "is simply
a matter of contract between the parties; [arbitration] is a way to resolve those disputes – but only those
disputes – that the parties have agreed to submit to arbitration."  Id.; see PaineWebber Inc. v. Elahi, 87
F.3d 589, 594-95 (1st Cir. 1996) (arbitration is matter of contract law and party can only be made to
submit to arbitration those disputes which it has agreed to submit).

The Court may compel arbitration only when satisfied that the making of the agreement is not
at issue.  Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004).
Generally, state law principles of contract formation govern whether a valid arbitration agreement
exists.  Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006).  Under Kansas law,
the question whether the parties have created a binding contract depends on their intent and is a
question of fact.  Reimer v. Waldinger Corp., 265 Kan. 212, 214, 959 P.2d 914, 916 (1998).

As to defendant's initial burden, the record contains sufficient evidence of an enforceable
arbitration agreement.  Specifically, the employment agreement contains an arbitration clause which
states that the parties will arbitrate any dispute which arises out of discharge of plaintiff's employment.
Plaintiff agrees that he signed the employment agreement and initialed the arbitration clause.  This
satisfies defendant's obligation under the first step of the burden-shifting framework to present
evidence of an enforceable agreement to arbitrate.  In response, plaintiff presents four alternative
arguments: (1) there is no agreement to arbitrate because the retention bonus agreement superceded
the employment agreement; (2) he revoked the agreement to arbitrate when he filed this suit; (3)

Kansas law prohibits arbitration of employment disputes; and (4) defendant has waived any right to arbitrate.

I.      Effect of Retention Bonus Agreement

        Plaintiff concedes that the employment agreement contains an agreement to arbitrate employment contract disputes.  He argues, however, that the retention bonus agreement implicitly revoked the employment agreement.  Although the retention bonus agreement does not expressly revoke the employment agreement, plaintiff asserts that the bonus agreement is inconsistent with the prior agreement and therefore supercedes it.  Plaintiff points out that the retention bonus agreement specifically states that "[n]othing in this Retention Bonus Agreement is intended to modify the at-will employment relationship between the Company and you."  See Retention Employment Agreement, attached as Ex. B to Affidavit of Phillip Hill, attached as Ex. 1 to Plaintiff's Response (Doc. #17) at ¶ 7.  Plaintiff then argues as follows:

> The [retention employment agreement] specifically classified the Plaintiff's employment as "at-will".  Id.  Kansas has long followed the general rule that an employee is either subject to an employment agreement or "at-will".  See Johnson v. Nat'l Beef Packing Co., 551 P.2d 779, 220 Kan. 52, 54 (1976).  Therefore, under Kansas contract law, it is wholly inconsistent to be an "at-will" employee and subject to an employment contract.  The 2007 Employee Retention Bonus Agreement did not contain any provisions regarding arbitration of disputes.  When the Plaintiff and the Defendant agreed to the terms of the Retention Bonus Agreement, the Plaintiff became an "at-will" employee, thereby revoking, rescinding, and/or superseding the September 18, 2000 employment agreement, and in effect, removing any enforceable agreement to arbitrate employment disputes.

Plaintiff's Response (Doc. #17) at 7, citing Johnson v .Nat'l Beef Packing Co., 220 Kan. 52, 54 (1976) (employment policy manual did not create fixed term of employment).  Plaintiff's argument relies on a faulty premise.  "[A]n at-will employee *does* work under an employment contract, by which, at its

most basic level, the employee promises to do a certain job and the employer promises payment therefor; the failure to fulfill either promise constitutes a breach of contract." Durkin v. CIGNA Prop. & Cas. Corp., 942 F.Supp. 481, 487 (D. Kan. 1996) (applying Kansas contract law).  The issue becomes whether that contract contains a provision governing arbitration.  As the Seventh Circuit has explained:

> Employment at will is not a state of nature but a continuing contractual relation.  Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract.  All that is missing is a provision that gives the contract a fixed term or that entitles one or both parties to a specified amount of notice before the other party can cancel the contract without liability.

McKnight v. Gen. Motors Corp., 908 F.2d 104, 109 (7th Cir. 1990) (further citations omitted).  Here, under the employment agreement, plaintiff and defendant's predecessor agreed to arbitrate employment disputes.  The retention bonus agreement does not state that it supercedes the employment contract. Further, the retention bonus agreement does not explicitly or implicitly alter the employment agreement, other than to provide an incentive for plaintiff, as an at-will employee, to agree to continue his employment through a certain date in exchange for $20,000.  Nothing in the retention bonus agreement conflicts with the employment agreement.  Therefore, under Kansas contract law, the retention bonus agreement did not supercede the employment agreement.  See Fleetwood Enterprises v Coleman, 37 Kan. App.2d 850, 859, 161 P.3d 765, 774 (2007) (court reads series of agreements to determine parties intent; if two contracts conflict, subsequent contract which covers same subject matter as first rescinds earlier contract).  The retention bonus agreement did not alter the arbitration clause in the 2000 employment agreement.[2]

---

[2]     Plaintiff also notes that he refused to sign the proposed employment agreement.  But he does not provide any reason why his refusal to sign the proposed agreement would render the earlier

II.     Effect Of Filing Suit

Plaintiff also argues that assuming the parties had a valid agreement to arbitrate, he revoked that agreement when he filed suit against defendant.  In support of his argument, plaintiff cites a Kansas state court case that addresses the common law rule developed in Kansas before enactment of the Kansas Uniform Arbitration Act.  See Thompson v. Phillips Pipe Line, 200 Kan. 669, 676, 438 P.2d 146, 151 (1968).  The common law rule permitted either party to revoke an arbitration agreement at any time prior to the making of an award, but it does not apply when the arbitration agreement is governed by statute.  See Umbenhower v. Copart, Inc., No. 03-2476-JWL, 2004 WL 2660649, at *1 n.1 (D. Kan. Nov 19, 2004), citing Baxter v. John Weitzel, Inc., 19 Kan.App.2d 467, 475, 871 P.2d 855, 860 (Kan. Ct. App. 1994).  The Federal Arbitration Act, 9 U.S.C. § 1 governs the arbitration agreement executed by the parties here.  See Circuit City Stores, 532 U.S. at 119.  Plaintiff's argument that he revoked the arbitration clause by filing this lawsuit lacks merit.

III.    Enforceability Of The Arbitration Agreement

Plaintiff next claims that the arbitration clause in the employment agreement is not enforceable because the Kansas Uniform Arbitration Act prohibits arbitration of employment disputes.  See Plaintiff's Response (Doc. #17) at 8 citing K.S.A. § 5-401(c)(2); Baxter v. Weitzel, 19 Kan. App. 2d at 475, 871 P.2d at 860 (1994).  The FAA, however, preempts conflicting state laws which exempt enforcement of arbitration agreements involving interstate commerce.  Biomat, Inc. v. Sampson, 28 Kan. App.2d 242, 244, 15 P.3d 846, 848 (Kan. Ct. App. 2000) (contracts involving commerce with an arbitration clause are enforceable under broad interpretation of FAA, notwithstanding provisions of K.S.A. § 5-401(c), which prohibit arbitration of employment and tort claims); Skewes v. Shearson

_____

employment agreement void.

-9-

Lehman Bros., 250 Kan. 574, 584, 829 P.2d 874, 881 (1992) (Congress intended to foreclose state legislative attempts to undercut enforceability of arbitration agreements).  Kansas law does not prohibit enforcement of the arbitration clause in the employment agreement.

IV.    Whether Defendant Has Waived Arbitration

Finally, plaintiff asserts that defendant waived its right to arbitrate this dispute because it did not request arbitration in a timely manner.  Due to strong state and federal policies favoring arbitration, a party asserting a waiver of arbitration has a heavy burden of proof.  See Peterson v. Shearson/Am. Express, Inc., 849 F.2d 464, 466 (10th Cir. 1988); Unified Sch. Dist. #503 v. R.E. Smith Constr. Co., No. 07-2423-GLR, 2008 WL 2152198, at * 2 (D. Kan. May 21, 2008); Robinson v. Food Serv. of Belton, Inc., No. 04-2321-JWL, 2005 WL 1799212, at *2 (D. Kan. July 11, 2005).  A waiver of arbitration rights requires an unequivocal demonstration of intent to waive.  Robinson, No. 04-2321-JWL, 2005 WL 1799212, at *2.  In determining whether a party has waived the right to arbitration, the Tenth Circuit examines the following factors: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.  Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994) (whether waiver has occurred depends on facts of particular case).

-10-

Under the first factor, the Court examines whether defendant's actions are inconsistent with the right to arbitrate. The Court finds that defendant's actions prior to the filing of its motion to stay and compel arbitration have been inconsistent with the assertion of a right to arbitrate the claims. Defendant filed an answer which did not assert the right to arbitrate and participated in a scheduling conference with the Court before it filed its motion to stay and compel arbitration.  This factor weighs slightly in favor of a finding that defendant waived any contractual right to arbitration.

With regard to the second factor, i.e., whether the litigation machinery has been substantially invoked, the Court held a scheduling conference and plaintiff served his initial Fed. R. Civ. P. 26(a)(1) disclosures before defendant filed its motion to stay and compel arbitration.  This factor tends to support a finding of waiver.

Addressing the third factor, the Court considers whether a party either requested arbitration close to the trial date or delayed for a long period before seeking a stay.  Plaintiff filed this action on November 3, 2008 and the Court held the scheduling conference on March 18, 2009.  Defendant filed its motion to stay and compel arbitration on April 3, 2009 – five months after plaintiff filed the action and a little over two weeks after the scheduling conference.  Further, defendant filed its motion to stay and compel arbitration eleven months before the scheduled trial.  The third factor weighs slightly against waiver. Cf. R.E. Smith Constr. Co., No. 07-2423-GLR, 2008 WL 2152198, at *7 (finding third factor "close call" where defendant filed motion to stay and compel arbitration five months after case was removed to federal court, two months after scheduling conference. and nine months before trial).[3]

The fourth factor does not apply in this case.  The Court next considers the fifth factor –

---

[3]     Plaintiff argues that defendant should have invoked arbitration during the administrative process.  As defendant points out, however, a private arbitration agreement cannot thwart the administrative process.  Santos v. GE Capital, 397 F. Supp. 2d 350, 354-55 (D. Conn. 2005) (employer did not waive rights to arbitration by participating in EEOC mediation).

whether important intervening steps, including taking advantage of judicial discovery not available in arbitration, have taken place.   Defendant points out that here, under the American Arbitration Association rules, the arbitrator has the authority to order discovery. This factor weighs against waiver.

The sixth factor asks whether a delay affected, misled or prejudiced the opposing party. The Court finds that plaintiff may have suffered some prejudice from defendant's delay in raising the issue of arbitration.  Plaintiff had participated in a scheduling conference and served his initial discovery disclosures before defendant filed its motion to stay and compel arbitration. The Court therefore finds that this factor weighs slightly in favor of finding that defendant waived its right to arbitration.  See R.E. Smith Construction Co., No. 07-2423-GLR, 2008 WL 2152198, at *7; cf. Consol. Brokers Ins. Servs., Inc. v. Pan-American Assurance Co., Inc, 427 F.Supp.2d 1074, 1078-80 (D. Kan. 2006) (no waiver where party invoked arbitration eight months after case filed and two months after parties exchanged initial disclosures and delay was due to disruptions from hurricane at defendants' headquarters in New Orleans).

**IT IS THEREFORE ORDERED** that Defendant's Motion To Stay Proceedings And To Compel Arbitration (Doc. #14) ("Defendant's Motion") filed April 3, 2009 be and hereby is **OVERRULED**.

Dated this 12th day of June, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

-12-